Celeste Brustowicz
COOPER LAW FIRM
1525 Religious Street
New Orleans, Louisiana  70130
Telephone:  504-399-0009
Facsimile:   504-309-6989
Email:  cbrustowicz@sch-llc.com
(Additional counsel of record in
Signature Block)

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIREWORKS LADY & CO., LLC, <br><br> Plaintiff, <br><br> vs. <br><br> FIRSTRANS INTERNATIONAL CO., <br><br> Defendant. | Case No.: _____ <br><br><br> COMPLAINT <br> 1) ANTI-TRUST |

Plaintiff brings this action on behalf of herself and all others similarly situated, against (1) the Defendant known as "FIRSTRANS": Firstrans International Co.  Plaintiff alleges the following based upon information and belief, the investigation of counsel, and personal knowledge as to the factual allegations pertaining to herself.

## I. INTRODUCTION

1.     If customers in the United States want fireworks from the People's Republic of China (PRC), they have no choice but to go through one man—Mr.

Ding. Ding Yan Zhong, known to the fireworks industry as Mr. Ding, has controlled the flow of fireworks from the PRC to the U.S. for a decade. Approximately 70% of all Chinese fireworks come to the U.S. under his control, allowing him to raise prices and block competitors.

2.     Mr. Ding controls two companies that dominate the importation of Chinese fireworks into the U.S.: Shanghai Huayang International Logistics Co. Ltd. ("Huayang") and Firstrans International Co. ("FIRSTRANS"). Huayang ships the majority of Chinese-produced fireworks from production to seaports in the PRC.  FIRSTRANS specializes in importing these fireworks into the US. Through these companies, Ding has gained control of the fireworks market coming from China and into the US.  Ding leverages his market power by requiring that US customers, as a condition of purchasing his fireworks, use FIRSTRANS to ship them to the U.S. ("Tying Arrangement"). This Tying Arrangement has allowed FIRSTRANS to charge grossly supracompetitive shipping prices. The shipping cost that FIRSTRANS charges, the "Tied Product," is the subject of this Action.

3.     Plaintiff, FIREWORKS LADY & CO., LLC, brings this suit on behalf of itself and a class of American fireworks merchants and customers who have hired FIRSTRANS for the purposes of shipping fireworks (the "Direct

COMPLAINT – PG. 2

Purchaser Class"), and for damages they have suffered by paying an illegal shipping premium on Chinese fireworks. Plaintiff and the Direct Purchaser Class also seek injunctive relief. Plaintiff and the Direct Purchaser Class bring these claims under the Sherman Act (15 U.S.C. §§ 1-7) and the Clayton Act (15 U.S.C. §§ 12-27) to challenge the Tying Arrangement as an unlawful restraint of trade.

## II. PARTIES

4.       Plaintiff, Fireworks Lady & Co., LLC, is organized and existing under the laws of the State of Florida, with a principal place of business at 8600 SW South River Drive, Suite 75, Miami, Florida.

5.       Defendant Firstrans International Co. ("FIRSTRANS") is an American company that, upon information and belief, is organized and exiting under the laws of the State of Indiana with its principal place of business located at 17420 S. Avalon Blvd., Suite 204, Carson, California.

## III. JURISDICTION AND VENUE

6.       This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 based upon the federal antitrust claims asserted under the Sherman Act, 15 U.S.C. § 1 et seq. The Court has personal jurisdiction over Defendant pursuant to 18 U.S.C. §§ 1965(a), (b), and (d). Pursuant to section 16 of the Clayton Act, 15 U.S.C. § 26, this action seeks to prevent and restrain violations of section 1 of the

Sherman Act, 15 U.S.C. § 1. In addition, the Plaintiffs seek damages pursuant to section 4 of the Clayton Act, 15 U.S.C. § 15.

7.    Venue is proper in this district under 28 U.S.C. § 1391(b) because the Defendant maintains a principal place of business in this judicial district.

## IV. FACTUAL ALLEGATIONS

8.    Mr. Ding controls approximately 70% of all Chinese fireworks entering the United States. This staggering market share has allowed Mr. Ding to set the prices and shipping costs of fireworks coming from the People's Republic of China (PRC).

9.    Ding owns two companies that he uses to dominate the fireworks market from the PRC: Firstrans International Co. ("FIRSTRANS") and Shanghai Huayang International Logistiscs Co., Ltd. ("Huayang").

10.    FIRSTRANS is a Non-Vessel Operating Common Carrier (NVOCC) licensed by the Federal Maritime Commission (FMC). As such, it must have an approved Qualifying Individual (QI) and carry the appropriate bonds. Generally speaking, there is a competitive market for NVOCC shippers.

11.    FIRSTRANS arranges the importation of goods for American customers. It also arranges the inland shipment of these imported goods to the U.S.

4830-0285-1972, V. 1

12. FIRSTRANS specializes in arranging the shipment of fireworks from the PRC to the U.S. It also arranges the shipment of other goods, such as electronics, clothing, industrial goods and plastics.

13. Over recent decades, the PRC has moved most of the production of fireworks for export from urban provinces along the coasts such as Guangdong, to rural interior provinces such as Hunan and Jiangxi.

14. Today, approximately 70% of the fireworks exported from China come from the interior provinces of Hunan and Jiangxi.

15. Consumer fireworks are classified by the U.S. Department of Transportation (U.S. DOT) for transportation as hazardous materials, commonly known by its labeling and placarding as 1.4G explosives; whereas, display fireworks used exclusively by licensed professionals are designated as 1.3G explosives.

16. In the PRC, fireworks for export are trucked from the firework production factories to consolidation warehouses for assembling of the orders and packing into shipping containers.

17. Export firework factories as well as the consolidation warehouses are required to have various licenses and/or permits from the PRC, as well as from provincial and local governments.

18.     Mr. Ding's other company, Huayang, a Chinese company, owns and operates consolidation warehouses in the interior provinces, such as Hunan, with the required licenses and/or permits from the PRC.   Ownership of these consolidation warehouses gives Mr. Ding effective control over the fireworks shipments from China's interior provinces (70% of the fireworks market)

19.     Huayang also arranges the inland shipment of goods in China as well as the ocean-going container ships (slot charters) to carry the goods exported from the PRC to countries around the world, including the U.S.

## HOW DING GAINED CONTROL

20.     Before February 2008, companies could ship fireworks out of a number of ports in the PRC. However, a fireworks explosion led Chinese authorities to require almost all fireworks to be shipped out of Shanghai. This consolidation allowed Ding to take control of the supply of fireworks produced in the PRC.

21.     On February 14, 2008, a series of fires and explosions destroyed the fireworks consolidation and packing warehouses in Foshan, Guangdong. 15,000 cartons of fireworks spread across 20 warehouses in Foshan exploded in the middle of the night.

4830-0285-1972, V. 1

22.    The loss of these facilities in Foshan led quickly to the closures of other facilities by various PRC government officials. PRC Government officials also required companies to obtain special permits to ship fireworks.

23.    The only remaining consolidation warehouses were owned and operated by Huayang, thus restricting the export firework factories in Hunan and Jiangxi to only the Huayang facilities.

24.    Huayang leveraged this situation to their advantage to dictate the methods, timeliness and rates for export fireworks, warehouse services and inland shipping from Hunan and Jiangxi to the seaports.

## DING'S SHIPPING ROUTE

25.    After production in Hunan and Jiangxi, Huayang trucks the fireworks from the export firework factories to Huayang's consolidation warehouses.

26.    Then, Huayang assembles the fireworks for orders and for subsequent export and packs them into shipping containers.

27.    Huayang then ships the loaded containers of fireworks, often using the Huayang fleet of river barges, to Shanghai and other seaports.

4830-0285-1972, V. 1

28.     Once in Shanghai or another seaport, Huayang arranges shipment of the fireworks across the ocean to the U.S. In the U.S, these fireworks are frequently received by Huayang's sister company, FIRSTRANS.

29.     Huayang also leveraged this situation to dictate the methods, timeliness and rates of shipments of fireworks from other provinces, such as Guangxi.

30.     Huayang also leveraged this situation to dictate the methods, timeliness and rates of the handling of the containers in the seaports, as well as the bookings on the slot charters.

31.     Huayang also leveraged this situation to dictate the methods, timeliness and rates for inland shipping within the U.S., by requiring U.S. customers to use its sister company, FIRSTRANS (the Tying Arrangement).

## HARM TO CONSUMERS

32.     In 2008, Ding's company Huayang transported 64,217,430 pounds of fireworks, according to Panjiva Inc., a firm that tracks companies involved in global trade. The next year, Huayang's volume increased to 79,541,209. By May of 2018, Huayang had transported 241 million pounds of fireworks from China to the U.S. that year alone. Ding's company has almost exclusive control of upwards of 70% of the supply of fireworks from China.

33.     Ding requires U.S. customers to use his other company, FIRSTRANS, to ship fireworks into the U.S. Since Ding has almost exclusive control over the fireworks market in China, other companies cannot compete and gain entry into the shipping market. Thus, U.S. customers have to rely almost exclusively upon FIRSTRANS to purchase Chinese fireworks.

34.     The anticompetitive Tying Arrangement and consequent market consolidation has allowed FIRSTRANS to greatly increase shipping costs. Before the explosion in Foshan, China, in 2008, the cost of shipping a container of fireworks from the PRC was roughly $5,000.   Now, FIRSTRANS charges between $8,000 and $15,000 to ship a container of consumer fireworks (1.4G) to be sold at roadside tents and convenience stores and big-box stores alike, while charging nearly $20,000 to ship a container of 1.3G explosive materials.

35.     As a result of this Tying Arrangement, American fireworks importers are paying an estimated $3,000 to $10,000 more per container than they might otherwise pay for the same warehouse and shipping services booked through other companies.

36.     Another effect of the Tying Arrangement is that it effectively precludes a competitive low-cost provider from accessing the shipping market.

Because of the Tying Arrangement, FIRSTRANS and Huayang have the ability to share in supracompetitive shipping rates.

37.    About 7,500 forty (40') foot containers (equaling 15,000 TEUs) of fireworks are exported from China to the U.S. each year at a cost of over $250 million.

38.    The additional costs due to these predatory market practices by FIRSTRANS results in American importers of fireworks paying an additional $15 to $20 million more per year.

## V. CLASS ACTION ALLEGATIONS

### A.    Class Definition

39.    Pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action seeking damages and equitable and injunctive relief under section 1 of the Sherman Act, 15 U.S.C. § 1, and section 4 of the Clayton Act, 15 U.S.C. § 15, on behalf of herself and the following class:

> All persons or entities in the United States (including its territories and the District of Columbia) who have hired Firstrans International Co. for purposes of shipping fireworks from the People's Republic of China into the United States, from February 14, 2008 to [date of public notice to the class].

Excluded from this "Direct Purchaser Class" are the defendants, and their officers, directors, management, employees, subsidiaries, and affiliates, and all federal governmental entities. Plaintiff reserves the right to revise the Class Definition based upon information learned through discovery.

## B.   Class Certification Requirements Under Rule 23

40.   **Numerosity:** Rule 23(a)(1). The members of the Direct Purchaser Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. Plaintiff is informed and believes that the members of the Direct Purchaser Class number in the thousands. The precise number of Direct Purchaser Class members may be ascertained from Defendant's records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, social media, and published notice.

41.   **Commonality and Predominance:** Rules 23(a)(2) and 23(b)(3). This action involves significant common questions of law and fact, which predominate over any questions affecting individual Direct Purchaser Class members, including, but not limited to:

a.      Whether Defendant demands from merchants, as a condition of being permitted to accept the Tying Products, that the merchant must also accept the Tied Product;

COMPLAINT – PG. 11

4830-0285-1972, V. 1

b.      Whether Defendant's Tying Arrangements are per se unlawful, because:

i. Defendant possesses and exercises monopoly or market power in the market in which its Tying Product competes; or

ii. Defendant possesses economic power sufficient to make probable the coercive Tying Arrangements;

c.      Whether the shipping rates that members of the Class have been forced to pay on the Tied Products exceed the rates that would prevail in the absence of the Tying Arrangements, or in otherwise competitive markets for fireworks shipping services;

d.      Whether Plaintiff and the other Direct Purchaser Class members had fewer choices than they would have had if Defendant had not engaged in the conduct alleged herein;

e.      Whether Plaintiff and the other Direct Purchaser Class members overpaid to ship Chinese Fireworks as a result of Defendant's anticompetitive behavior;

f.      The identity of the participants and co-conspirators in the scheme alleged herein;

g.      Whether Defendant's conduct violates the Sherman and Clayton Acts;

h.      Whether Plaintiff and Direct Purchaser Class members were injured in their business or property by Defendant's conduct;

i.      Whether Plaintiff and Direct Purchaser Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and

j.      Whether Plaintiff and Direct Purchaser Class members are entitled to damages and other monetary relief and, if so, in what amount.

42.   **Typicality:** Rule 23(a)(3). Plaintiff's claims are typical of the claims of the Direct Purchaser Class members whom it seeks to represent under Federal Rule of Civil Procedure 23(a)(3), because Plaintiff and each Class member hired Defendant to ship Chinese fireworks into the U.S. and were similarly injured as a direct and proximate result of the same wrongful practices by Defendant. Plaintiff's claims arise from the same practices and courses of conduct that give rise to the claims of the other Direct Purchaser Class members. Plaintiff's claims are based upon the same legal theories as the claims of the other Direct Purchaser Class members.

COMPLAINT – PG. 13

4830-0285-1972, V. 1

43.     **Adequacy:** Rule 23(a)(4). Plaintiff will fairly and adequately represent and protect the interests of the Direct Purchaser Class members as required by Federal Rule of Civil Procedure 23(a)(4). Plaintiff has retained counsel competent and experienced in complex class action litigation, including federal antitrust litigation. Plaintiff intends to prosecute this action vigorously. Neither Plaintiff nor its counsel has any interests that conflict with the interests of the other Direct Purchaser Class members. Therefore, the interests of the Direct Purchaser Class members will be fairly and adequately protected.

44.     **Declaratory and Injunctive Relief:** Rule 23(b)(2). Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Direct Purchaser Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Direct Purchaser Class as a whole.

45.     **Superiority:** Rule 23(b)(3). A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The burden and expense that would be required to individually litigate the Direct Purchaser Class claims against Defendant would be impracticable for

4830-0285-1972, V. 1

members of the Direct Purchaser Class to individually seek redress for Defendant's wrongful conduct.

46.   Even if Direct Purchaser Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## VI. CLAIMS FOR RELIEF/CAUSES OF ACTION

**Violation of the Sherman Act (15 U.S.C. §§ 1-7) and the Clayton Act (15 U.S.C. §§ 12-27).**

47.   Plaintiff and the Direct Purchaser Class hereby incorporate each preceding and succeeding paragraph as though fully set forth herein.

48.   Beginning at a time presently unknown to Plaintiff and the Direct Purchaser Class, but at least from February 14, 2008 onwards, Defendant has engaged in restraint of trade in violation of section 1 of the Sherman Act, 15 U.S.C. § 1, and the Clayton Act, 15 U.S.C. § 12, et seq. Defendant has violated the Sherman Act through the unlawful tying of acceptance of fireworks from the PRC and shipping services provided by Defendant.

49.     In furtherance of the unlawful conspiracy, the Defendant has committed overt acts, including, inter alia:

a.     Unlawfully tying the acceptance of fireworks imported from the PRC to shipping services provided by the Defendant;

b.     Defendant selling fireworks produced in the PRC to American merchants subject to the Tying Arrangement under which merchants are required to accept shipping costs at the offered rate, as a condition of being permitted to accept (or continue to accept) fireworks from the PRC.

50.     The anticompetitive behavior alleged herein has had the following effects, among others:

a.     Price competition in the shipment of Chinese Fireworks sold in the United States by Defendant has been restricted;

b.     Prices to ship Chinese fireworks into the United States by Defendant have been fixed, raised, maintained, and/or stabilized at artificially high, non-competitive levels;

c.     Defendant has fixed, raised, maintained, and/or stabilized artificially high profit margins on the shipment of fireworks, to the detriment of Plaintiff and the Direct Purchaser Class; and

COMPLAINT – PG. 16

d.      Plaintiff and members of the Direct Purchaser Class have been deprived of the benefits of free and open competition;

51.     The Tying Arrangement affects a substantial amount of commerce in the Tied Product Market. Ding's companies import roughly 70% of all Chinese-produced fireworks into the U.S. U.S. merchants and customers spend roughly $250 million a year to import fireworks from the PRC.

52.     The Tying Products (fireworks produced in the PRC) are distinct from the Tied Products (shipping services provided by the Defendant).

a.      The fireworks produced in the PRC are offered separately from the shipping services provided by the Defendant.

b.      The price of Chinese-produced fireworks imported by the Defendant is distinct from the price to ship them from the PRC to the U.S.

c.      Purchasers perceive that the fireworks and shipping services are separate items with separate demand.

d.      There is sufficient demand for the Tied Products separate from the Tying Product to identify a distinct product market in which it is efficient to offer the items separately. Without the Tying Arrangement, other shipping companies would be able to enter the market and offer shipping services.

4830-0285-1972, V. 1

53.     Defendant has tied the provision of Fireworks at issue on this Claim for Relief, as the Tying Arrangement has been implemented in hundreds of millions of dollars of merchant agreements. Plaintiffs have no other viable economic choice but to accept the Defendant's shipping rates in order to continue purchasing Chinese-produced fireworks from the Defendant's sister company, Huayang.

54.     Defendant has appreciable market power in the Tying Product Market. Defendant ships roughly 70% of all Chinese fireworks into the U.S. Defendant's dominant market share allows it to force the Tying Arrangement on unwilling customers and to raise prices for the Tied Item.

55.     The maintenance of the Tying Arrangement has the effect of foreclosing competition; raising prices to merchants, and hence their customers, for shipping services to the U.S.; driving up shipping costs for merchants and their customers and blocking competitors from entering the market; and is otherwise anticompetitive.

56.     If Defendant could not provide the Tied Product subject to the condition that the merchant must accept the shipping rates or forfeit the ability to accept the Tying Products, then Defendant could not have charged merchants supracompetitive rates for the Tied Products.

4830-0285-1972, V. 1

57.     The conduct of Defendant constitutes a per se violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

58.     The Tying Arrangement is per se unlawful. Alternatively, to the extent it is measured under a "rule of reason" analysis, the adverse effect of the Tying Arrangement upon competition as a whole in the relevant market for fireworks is not outweighed by any pro-competitive virtue in that market, and any pro-competitive virtue could be achieved through alternative means that are less restrictive of competition.

59.     In the absence of appropriate injunctive relief, Defendant's violations of the antitrust laws will continue unabated and the Class will continue to suffer the harms complained of in this action.

60.     As a direct, foreseeable and proximate result of Defendant's violation of the Sherman Act, section 1, Plaintiff and members of the Direct Purchaser Class have been injured and damaged in their respective businesses and property in an amount to be determined according to proof and are entitled to recover threefold the damages sustained pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15.

WHEREFORE, Plaintiff respectfully demands:

A.     That the Court declare, adjudge and decree that Defendant has committed the violations of federal law alleged herein;

B.     That the Court enter an Order pursuant to Fed. R. Civ. P. 23 permitting this action to be maintained as a class action on behalf of the Class specified herein;

C.     That defendant be permanently enjoined and restrained from implementing or enforcing the Tying Arrangement, or from entering into agreements with merchants whereby the ability of the merchant to accept Chinese Fireworks is conditioned upon its agreement to accept that those fireworks be shipped through Defendant;

D.     That the Court award damages, based upon overcharge incurred by the Damages Class on the shipment of Chinese Fireworks, in amounts to be determined at trial and then trebled;

E.     That the Court award attorneys' fees and costs of suit; and

COMPLAINT – PG. 20

1    F.    That the Court award such other and further relief as it may deem

2

3    just and proper.

4    Dated this 31st day of December, 2018.

5

6                                          Celeste Brustowicz (#238686)
                                           Barry J. Cooper, Jr. (Pro hac vice
7                                          pending)
                                           COOPER LAW FIRM, L.L.C.
8                                          1525 Religious Street
                                           New Orleans, Louisiana  70130
9                                          Telephone:  504-399-0009
                                           Facsimile:    504-309-6989
10                                         Email:  cbrustowicz@sch-llc.com
11

12                                         Stephen Murray, Jr. (Pro hac vice
                                           pending)
13                                         MURRAY LAW FIRM
                                           650 Poydras Street, #2150
14                                         New Orleans, Louisiana  70130
                                           Telephone:  504-525-8100
15                                         Facsimile:   504-
                                           Email:  smurrayjr@murray-
16                                         lawfirm.com
17

18

19                                         Donald Creadore (Pro hac vice
                                           pending)
20                                         CREADORE LAW FIRM
                                           305 Broadway – 14th Floor
21                                         New York, NY  10007
                                           Telephone:  212-355-7200
22                                         Facsimile:
                                           Email:  donald@creadorelawfirm.com
23                                         *Attorneys for Plaintiffs*
24

25

26                                         Samuel Trussell (#120417)
                                           77-564 Country Club Drive
27

28

                                           COMPLAINT – PG. 21

4830-0285-1972, V. 1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Suite 150
Palm Desert, CA  92211
Telephone:  877-474-6772
Facsimile:  877-474-6781
Email:  Samuel@trusselllaw.com
*Local Counsel Designee per*
*L.R. 83-2.1.3.4*

COMPLAINT – PG. 22

4830-0285-1972, V. 1