1  RICHARD G. PARKER, SBN 62356
   rparker@gibsondunn.com
2  JOSHUA LIPTON (*Pro Hac Vice*)
   jlipton@gibsondunn.com
3  GIBSON, DUNN & CRUTCHER LLP
   1050 Connecticut Avenue, N.W.
4  Washington, DC 20036-5306
   Telephone:  202.955.8500
5  Facsimile:   202.467.0539

6  JOSEPH R. ROSE, SBN 279092
   jrose@gibsondunn.com
7  GIBSON, DUNN & CRUTCHER LLP
   555 Mission Street, Suite 3000
8  San Francisco, California 94105
   Telephone:  415.393.8200
9  Facsimile:   415.374.8306

10 DIANA M. FEINSTEIN, SBN 302626
   dfeinstein@gibsondunn.com
11 GIBSON, DUNN & CRUTCHER LLP
   333 South Grand Avenue
12 Los Angeles, California 90071-3197
   Telephone:  213.229.7000
13 Facsimile:   213.229.7520

14

15 Attorneys for Defendant
   FIRSTRANS INTERNATIONAL CO.
16

17            UNITED STATES DISTRICT COURT

18            CENTRAL DISTRICT OF CALIFORNIA

19                 WESTERN DIVISION

20 | FIREWORKS LADY & CO., LLC, | CASE NO. 2:18-CV-10776-CJC-MRW |
|---|---|
21 |                Plaintiff, | **DEFENDANT FIRSTRANS INTERNATIONAL CO.'S NOTICE OF** |
22 |        v. | **MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED** |
23 | FIRSTRANS INTERNATIONAL CO.; | **COMPLAINT; AND MEMORANDUM OF POINTS AND AUTHORITIES IN** |
24 | HUA YANG TRANSPORTATION CO.; | **SUPPORT OF MOTION TO DISMISS** |
25 | and DING YAN ZHONG | **Hearing** |
| | Date:       July 15, 2019 |
26 |               Defendants. | Time:       1:30 p.m. |
27 | | Location:  Courtroom 7C |
| | Judge:      Hon. Cormac J. Carney |
28

Gibson, Dunn &
Crutcher LLP

DEFENDANT FIRSTRANS INTERNATIONAL CO.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. 2:18-CV-10776-CJC-MRW

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on July 15, 2019, at 1:30 p.m. in Courtroom 7C of this Court at 350 W. 1st Street, Los Angeles, California, 90012, Defendant Firstrans International Co. ("Firstrans") will and hereby does move the Court to dismiss with prejudice all claims against Defendant asserted by Plaintiff Fireworks Lady & Co., LLC ("Plaintiff") in the above-captioned action under Federal Rules of Civil Procedure 12(b)(6).  As a matter of law, Plaintiff's First Amended Complaint fails to state a claim against Firstrans upon which relief can be granted.  This Motion to Dismiss is based on this Notice of Motion, the Memorandum of Points and Authorities submitted herewith, and other such matters that the Court may consider.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on May 24, 2019.

# RELIEF SOUGHT

Firstrans seeks an order dismissing Plaintiff's claims with prejudice.

Dated:  May 31, 2019                    GIBSON, DUNN & CRUTCHER LLP


                                        By:  _____/s/ Richard G. Parker_____
                                                   Richard G. Parker

                                        Attorney for Defendant Firstrans
                                        International Co.

# CONTENTS

I.    PRELIMINARY STATEMENT ........................................................................... 1

II.    ARGUMENT................................................................................................... 2

    A.    Plaintiff Still Cannot State a Tying Claim ................................................. 2

        1.    Failure to Plead Two Distinct Products or Services ....................... 2

        2.    Failure to Allege Injury to Competition ........................................ 5

    B.    The Court Should Dismiss Plaintiff's Monopolization Claim.................... 6

    C.    The Court Should Dismiss Plaintiff's Derivative State Law Claims ...... 10

        1.    Plaintiff Fails to Allege Any Breach of Contract by Firstrans ...... 11

        2.    Plaintiff Fails to Allege Negligence by Firstrans ......................... 12

        3.    The Court Should Dismiss Plaintiff's Claim for "Piercing the Corporate Veil"............................................................................ 14

        4.    The Court Should Dismiss Plaintiff's Claim for "Civil Conspiracy".................................................................................. 15

        5.    Plaintiff Fails to Allege an Independent FDUPTA Claim............. 15

        6.    The Court Should Dismiss Plaintiff's Claim for "Unjust Enrichment"................................................................................. 16

    D.    Plaintiff's Claims Against Mr. Ding and Hua Yang Are Nonsensical ............................................................................................ 17

    E.    Plaintiff's Claims Should Be Dismissed with Prejudice ......................... 17

III.    CONCLUSION ............................................................................................. 18

i

Gibson, Dunn & Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Aas v. Superior Court*,
    24 Cal. 4th 627 (2000) ......................................................................... 13

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
    7 Cal. 4th 503 (1994) ........................................................................... 15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................... 3, 12, 16

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .............................................................................. 3, 16

*Brantley v. NBC Universal, Inc.*,
    675 F.3d 1192 (9th Cir. 2012) ............................................................ 1, 5, 6

*Calvert v. Huckins*,
    875 F. Supp. 674 (E.D. Cal. 1995) ........................................................ 14

*Cambridge Elecs. Corp. v. MGA Elecs., Inc.*,
    227 F.R.D. 313 (C.D. Cal. 2004) ..................................................... 14, 17

*Copperweld Corp. v. Independence Tube Corp.*,
    467 U.S. 752 (1984) ............................................................................... 15

*CRV Imperial-Worthington, LP v. Gemini Ins. Co.*,
    770 F. Supp. 2d 1074 (S.D. Cal. 2010) ................................................ 16

*Cty. of Santa Clara v. Atl. Richfield Co.*,
    137 Cal. App. 4th 292 (2006) ................................................................ 13

*Debjo Sales, LLC v. Houghton Mifflin Harcourt Publ'g Co.*,
    No. 14-4657, 2015 WL 1969380 (D.N.J. Apr. 29, 2015) ....................... 4

*Dept. of Water and Power of City of L.A. v. ABB Power T & D Co.*,
    902 F. Supp. 1178 (C.D. Cal. 1995) ..................................................... 13

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
    546 F.3d 981 (9th Cir. 2008) ............................................................. 9, 10

Gibson, Dunn & Crutcher LLP

*In re eBay Seller Antitrust Litig.*,
545 F. Supp. 2d 1027 (N.D. Cal. 2008)....................................................5

*F. Hoffmann-La Roche Ltd. v. Empagran S.A.*,
542 U.S. 155 (2004).................................................................9, 10

*Felice v. Invicta Watch Co. of Am., Inc.*,
No. 16-CV-62772-RLR, 2017 WL 3336715 (S.D. Fla. Aug. 4, 2017)...................15

*Gaylor v. Morin*,
No. EDCV 16-1224 JGB (KKx), 2018 WL 6133405 (C.D. Cal. Jan. 3,
2018).....................................................................................15

*Gen. Bus. Sys. v. N. Am. Philips Corp.*,
699 F.2d 965 (9th Cir. 1983) ............................................................8

*Green Atlas Shipping S.A. v. United States*,
306 F. Supp. 2d 974 (D. Or. 2003) .....................................................14

*Hill v. Roll Int'l Corp.*,
195 Cal. App. 4th 1295 (2011) .........................................................16

*Jefferson Parish Hosp. Dist. No. 2 v. Hyde*,
466 U.S. 2 (1984).......................................................................5

*JES Props., Inc. v. USA Equestrian, Inc.*,
No. 802CV1585T24MAP, 2005 WL 1126665 (M.D. Fla. May 9,
2005) ...................................................................................16

*Kendall v. Visa U.S.A., Inc.*,
518 F.3d 1042 (2008) ...................................................................17

*Ladd v. Cty. of San Mateo*,
12 Cal. 4th 913 (1996)..................................................................13

*Leadsinger, Inc. v. BMG Music Publ'g*,
512 F.3d 522 (9th Cir. 2008) ...........................................................18

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012)..................................................16

*Maddock v. KB Homes, Inc.*,
631 F. Supp. 2d 1226 (C.D. Cal. 2007) .................................................14

Gibson, Dunn &
Crutcher LLP

*Nibbi Bros., Inc. v. Home Fed. Sav. & Loan Ass'n*,
    205 Cal. App. 3d 1415 (1988) ................................................................. 16

*Oahu Gas Serv. v. Pac. Res., Inc.*,
    838 F.2d 360 (9th Cir. 1988) ................................................................... 8

*Occidental Petroleum Corp. v. Buttes Gas & Oil Co.*,
    331 F. Supp. 92 (C.D. Cal. 1971), *aff'd*, 461 F.2d 1261 (9th Cir. 1972) ............... 7, 8

*Omega Envtl., Inc. v. Gilbarco, Inc.*,
    127 F.3d 1157 (9th Cir. 1997) ................................................................. 8

*Pac. Bell Tel. Co. v. Linkline Comms., Inc.*,
    555 U.S. 438 (2009) ............................................................................... 8

*Reddy v. Litton Indus., Inc.*,
    912 F.2d 291 (9th Cir. 1990) ......................................................... 6, 7, 18

*Richman v. Hartley*,
    224 Cal. App. 4th 1182 (2014) .............................................................. 12

*Rick-Mik Enters. Inc. v. Equilon Enters., LLC*,
    532 F.3d 963 (9th Cir. 2008) ............................................................. 2, 5

*S.F. Unified Sch. Dist. v. W.R. Grace & Co.*,
    37 Cal. App. 4th 1318 (1995) ............................................................... 13

*Sacramento Reg'l Transit Dist. v. Grumman Flxible*,
    158 Cal. App. 3d 289 (1984) ................................................................ 13

*Seely v. White Motor Co.*,
    63 Cal. 2d 9 (1965) .............................................................................. 13

*Somers v. Apple, Inc.*,
    729 F.3d 953 (9th Cir. 2013) ................................................................. 9

*Troyk v. Farmers Group, Inc.*,
    171 Cal. App. 4th 1305 (2009) .............................................................. 12

*Underhill v. Hernandez*,
    168 U.S. 250 (1897) .............................................................................. 7

*Unigestion Holding, S.A. v. UPM Tech., Inc.*,
    305 F. Supp. 3d 1134 (D. Or. 2018) ........................................................ 4

*United Mine Workers of Am. v. Gibbs*,
　　383 U.S. 715 (1966)............................................................................ 10, 11

*United States v. Hui Hsiung*,
　　778 F.3d 738 (9th Cir. 2015) ............................................................... 9

*Verizon Comms. Inc. v. Law Offices of Curtis V. Trinko, LLP*,
　　540 U.S. 398 (2004).............................................................................. 8

DEFENDANT FIRSTRANS INTERNATIONAL CO.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. 2:18-CV-10776-CJC-MRW

# I.   PRELIMINARY STATEMENT

Plaintiff has not cured the flaws in its initial Complaint.  Most notably, Plaintiff still fails to allege facts demonstrating "that demand for one segment of Firstrans's shipping process is separate from demand for the other segments."  Dkt. 39 ("MTD Order") at 5.  The problem, of course, is the utter implausibility of the claim.  Purchasers of fireworks in the United States have no need for inland river barge shipping of fireworks within China (or any other segment of the journey) without purchasing the whole journey.  Plaintiff's claim of a tie between the "purchase of inland river delivery services" and "the purchase of overseas delivery services for consumer fireworks" (First Amend. Compl. ("FAC") ¶ 108) thus is not a tie at all—it is just a description of different segments of a single journey.

Plaintiff likewise still fails to allege facts showing injury to competition in the allegedly tied product market: overseas delivery services.  Plaintiff readily admits that "there is a competitive market for NVOCC shippers" (Dkt. 1 ¶ 10) and that "there are a host of international overseas carriers" (Dkt. 37 at 2).  Plaintiff thus cannot and does not allege facts showing injury to competition in the ocean shipping market.  Plaintiff instead adds a new section—tellingly captioned "Harm to *Competitors*," rather than to *competition*—that focuses on supposed harm to competing river barge operators in inland China.  But even taken as true, those allegations do not show harm to competition in the tied product market, which is an essential element of a tying claim.  *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1199 (9th Cir. 2012).

Incapable of pleading a tying claim, Plaintiff takes the kitchen-sink approach—alleging everything and anything; heaping on a generous portion of "information and belief" speculation; naming as a defendant every person or entity it can connect to Firstrans (including suing Firstrans also under its former name); and asserting a salad of new claims, some of which are not even claims at all (such as "Piercing the Corporate Veil" and a "Civil Conspiracy" between Firstrans, its alleged owner, and Firstrans again under its former name).  But Plaintiff has asserted no viable claim under any theory.

Indeed, Plaintiff goes so far as to invite this Court to probe into the permitting decisions of "Chinese bureaucrats" (FAC ¶ 40) and explore whether there was "improper and illegitimate government interference" by provincial Chinese authorities into river barge shipping in inland China (FAC ¶ 37). It is difficult to conceive of a subject that is more clearly *not* the subject of a proper claim in a United States District Court.

Despite having a second bite at the apple, Plaintiff still cannot state any claim for relief. The Court should dismiss the First Amended Complaint in its entirety, this time with prejudice.

## II.     ARGUMENT

### A.     Plaintiff Still Cannot State a Tying Claim

#### 1.     Failure to Plead Two Distinct Products or Services

As the Court has observed, "[t]he fact that a shipping company controls the discrete segments of its shipping process does not indicate the presence of distinct products or services." MTD Order at 5. What matters instead is whether there is "'a sufficient demand for the purchase of the tied product separate from the tying product.'" *Id.* (quoting *Rick-Mik Enters. Inc. v. Equilon Enters., LLC*, 532 F.3d 963, 975 (9th Cir. 2008)). Clear enough. Yet, Plaintiff again fails to allege any facts showing that U.S. customers have any demand for a portion of the journey from factories in China without having the products shipped all the way to them. River barge service in inland China, for example, is simply not something U.S. customers plausibly would purchase without the rest of the journey.

In its original Complaint, Plaintiff struggled to articulate what it alleged the tied and tying products to be. The Amended Complaint now lands on the labels "inland delivery" as the "tying product" and "delivery services from Shanghai to the U.S." as the "tied product." FAC ¶¶ 100, 108. But like the initial Complaint, Plaintiff's new pleading fails to allege any facts showing U.S. customers desire to purchase one portion of this journey without the rest of it. To the contrary, the new facts alleged by Plaintiff reaffirm the (obvious) conclusion that the service purchased by U.S. customers is the

journey from factory in China to the U.S. destination.  For example, Plaintiff alleges that fireworks in a warehouse in inland China are "consolidated according to final destination in the United States; e.g., cartons destined for Los Angeles are placed together for easy movement, separate from cartons destined for Newark, NJ," and Plaintiff's cartons destined for Miami "are consolidated with other cartons of consumer fireworks destined for Miami, FL."  FAC ¶ 6.  And Plaintiff alleges that the transportation journey is integrated across modes of transportation, as fireworks containers are transferred directly from river barges onto "feeder barges that are designed to moor alongside an oceangoing vessel," without actually landing in Shanghai.  FAC ¶ 9.

Plaintiff also alleges that the integrated transport of fireworks across modes of transportation is dictated by safety considerations and government regulations.  For example, Plaintiff alleges that "[t]he Port of Shanghai does not allow entry of consumer fireworks into the port unless those fireworks come from a certified warehouse."  FAC ¶ 5.  And Plaintiff alleges that "[t]he Maritime Safety Administration (MSA) and Shanghai International Port Group (SIPG) have promulgated rules whereby only persons with permits to transfer may bring containers of consumer fireworks into the feeder berths situated in the vicinity of the port of Shanghai."  FAC ¶ 10.  Thus, according to Plaintiff's own allegations, control over the fireworks throughout the entire journey is not merely a function of consumer preference, but is a matter of public safety as well.

Plaintiff is left with nothing but a bare legal conclusion that there is "sufficient demand for the Tied Products separate from the Tying Product."  FAC ¶ 111.  That legal conclusion is not only unsupported by any factual allegations, but it is contradicted by Plaintiff's allegations about the safety and permitting factors that dictate integrated shipping across modes of transportation.  Under *Twombly* and *Iqbal*, Plaintiff's "[t]hreadbare recitals" and contradicted "conclusory statements" should be disregarded. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Moreover, Plaintiff's tying theory continues to fly in the face of common sense. As the Court observed, "[u]nder Plaintiff's theory"—essentially unchanged in the FAC—"any shipping company would potentially face antitrust liability whenever it transports a product through multiple modes of transportation or uses a storage facility in the course of delivering its goods." MTD Order at 5. Plaintiff's new factual allegations only serve to highlight the absurdity of its proposed *per se* rule. For example, requiring shippers to sell different components of the journey separately would disrupt the efficient consolidation of cartons by final destination that is practiced in the industry. *See* FAC ¶ 6. And requiring shippers to hand over control to other shippers as modes of transportation change would disrupt the efficient and safe transfer of fireworks from barge to ocean-going vessel that is described in the Amended Complaint. *See* FAC ¶ 9.

Because Plaintiff's tying theory remains the same, the cases Firstrans cited in its original motion rejecting similar tying theories remain persuasive here. *See* Dkt. 32 at 7. For example, in *Unigestion Holding, S.A. v. UPM Technology, Inc.*, the court rejected the theory that servicing international calls from the United States to Haiti and local termination of those calls were separate products. 305 F. Supp. 3d 1134, 1151 (D. Or. 2018). There, defendant allegedly "require[d] that all international calls destined for . . . [a] subscriber in Haiti be switched though the [defendant's] USA gateway." *Id.* The court dismissed the claim, finding no plausible allegation of "independent consumer demand for international call transportation services as a standalone product," and holding that "[defendant's] requirement that calls terminating on its network be switched through its own gateway is not anticompetitive." *Id.* Likewise, in *Debjo Sales, LLC v. Houghton Mifflin Harcourt Publishing Co.*, the court dismissed a Section 1 claim alleging a tie between "K-12 educational materials and delivery of the same" to school districts because the plaintiff failed to "allege facts sufficient to show that consumer demand for delivery of educational materials makes it efficient to separate the materials from their delivery." No. 14-4657, 2015 WL 1969380, at *4 (D.N.J. Apr. 29, 2015).

The common-sense conclusion is clear: shipping fireworks from producers in China to consumers in the United States is a single service, and not a tie between each of the different steps on the journey. *See Rick-Mik*, 532 F.3d at 974 (affirming dismissal where allegedly tied products were not "separate and distinct" products).

## 2.    Failure to Allege Injury to Competition

Plaintiff must allege facts showing injury to competition in the tied product market. *Brantley*, 675 F.3d at 1199; *In re eBay Seller Antitrust Litig.*, 545 F. Supp. 2d 1027, 1034 (N.D. Cal. 2008) (dismissing tying claim for failure to allege injury to competition in the tied product market).  As the Ninth Circuit explained in *Brantley*, "courts distinguish between tying arrangements in which a company exploits its market power by attempting 'to impose restraints on competition in the market for a tied product' (which may threaten an injury to competition) and arrangements that let a company exploit its market power 'by merely enhancing the price of the tying product' (which does not)."  675 F.3d at 1199 (quoting *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 14 (1984)).  The Court did not reach this issue in dismissing the initial Complaint—and it need not reach the issue here if it agrees that Plaintiff has not alleged a tie between two separate products—but Plaintiff's continuing failure to plead this element of its claim provides an additional reason to dismiss the Amended Complaint.

Plaintiff asserts that "delivery services from Shanghai to the U.S." is the market for the tied product.  FAC ¶ 100; *see id.* ¶ 108.  Plaintiff alleges no facts showing any plausible injury to competition in this market.  Indeed, Plaintiff has alleged the opposite: that competition is alive and well in the purported market for transocean shipping from China to the United States.  For example, Plaintiff alleged in its initial Complaint that "[g]enerally speaking, there is a competitive market for NVOCC shippers"—the purported market in which Firstrans operates.  Compl. ¶ 10.  In addition, Plaintiff asserted in its prior Opposition brief that "there are a host of international overseas carriers that ship from Shanghai to ports throughout the world including the U.S."  Dkt. 37 at 2.  Plaintiff cannot now run away from these allegations or contradict them because

an "amended complaint may only allege other facts consistent with the challenged pleading." *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296-97 (9th Cir. 1990) (citation omitted) (affirming dismissal without leave to amend where "it would not be possible for [plaintiff] to amend his complaint to allege a completely new injury that would confer standing to sue without contradicting any of the allegations of his original complaint.").

Plaintiff does not satisfy this element by asserting that Firstrans charges prices that are supposedly too high, as "Plaintiff[] may not substitute allegations of injury to the claimants for allegations of injury to competition." *Brantley*, 675 F.3d at 1200. Indeed, mere allegations of "increasing prices" do not substitute for facts showing injury to the competitive process. *Id.* at 1201-02. Nor does Plaintiff satisfy this element by alleging that Firstrans somehow prevented other companies from shipping fireworks in inland China (allegations which, as discussed below, are implausible in any event). *See* FAC ¶¶ 65-74. Those allegations at most relate to the purported *tying product*—"inland river delivery services" (FAC ¶ 108). They do not show the requisite injury to competition in the *tied product* market. *Brantley*, 675 F.3d at 1199.

## B. The Court Should Dismiss Plaintiff's Monopolization Claim

Unable to plead a tying claim, Plaintiff attempts to plead a claim for "monopolizing the market for inland transportation services from Hunan and Jiangxi provinces to Shanghai." FAC ¶ 121. This claim, however, fails as a matter of law for several reasons.

First, Plaintiff has not alleged that Firstrans engaged in any conduct in the purported market for inland transportation services in China. Plaintiff argues that "Defendants"—Firstrans, Firstrans's Indiana-incorporated predecessor Hua Yang Transportation Co., and Firstrans's alleged President, Mr. Ding (FAC ¶¶ 48-55)—have somehow monopolized "the market for inland transportation services from Hunan and Jiangxi provinces to Shanghai." FAC ¶ 121. Yet, Plaintiff previously alleged that Firstrans had no involvement in that leg of the shipping journey, asserting instead that a Chinese company called Shanghai Huayang International Logistics Co. Ltd.—a

company not named as a defendant here—"ships the majority of Chinese-produced fireworks from production to seaports in [China]," while Firstrans "specializes in importing these fireworks into the US."  Compl. ¶ 2.  Plaintiff may not contradict those allegations in its Amended Complaint (*Reddy*, 912 F.2d at 296-97) and offers no alternative facts to indicate how Defendants here monopolized a market in which they do not participate.[1]

Even setting that incongruity aside, Plaintiff alleges that the source of Firstrans's purported monopoly power over the shipping of fireworks in inland China is the permitting decisions of Chinese government officials—decisions that are beyond the scrutiny of this Court.  *See Occidental Petroleum Corp. v. Buttes Gas & Oil Co.*, 331 F. Supp. 92, 108-10 (C.D. Cal. 1971) (dismissing antitrust claims predicated on acts of a foreign government), *aff'd*, 461 F.2d 1261 (9th Cir. 1972); *see also Underhill v. Hernandez*, 168 U.S. 250, 252 (1897) ("[T]he courts of one country will not sit in judgment on the acts of the government of another, done within its own territory.").  Plaintiff alleges that fireworks are allowed to enter the Port of Shanghai only if "those fireworks come from a certified warehouse."  FAC ¶ 5.  And Plaintiff alleged in the initial Complaint that the only entity to possess permits for consolidation warehouses in Hunan and Jiangxi is Shanghai Huayang International Logistics Co. Ltd.  *See* Compl. ¶ 23.  Plaintiff further alleges in the FAC that "Defendants" possess one of the only "permits to transfer" consumer fireworks from warehouses in China to the ports of Shanghai and that of the companies that possess such permits, only Defendants possess "certified warehouses."  FAC ¶¶ 10-12; *see also id.* ¶ 37 (alleging that "Defendants' [sic] are exploiting their permit to transfer"), *id.* ¶ 40 (alleging that "Defendants have exploited their unearned and undeserved advantages—e.g., certified warehouses, a permit to transfer").  The Amended Complaint also hints darkly at "improper and undue

---

[1] This pleading failure would also be fatal to Plaintiff's tying claim, even if it had alleged two separate products that were tied together.  That is because Plaintiff has not alleged that Firstrans took any action in China to link together any portions of the journey.

influence upon Chinese bureaucrats" (FAC ¶ 40) and "improper and illegitimate government interference and influence" (FAC ¶ 37), though it provides no specifics regarding these supposed machinations. Yet, "illegitimate" or not, the Chinese government's permitting decisions surrounding the storage and transportation of dangerous cargo are not actionable under the Sherman Act. *Occidental*, 331 F. Supp. at 108-10.

Second, and relatedly, Plaintiff offers no factual allegations showing exclusionary conduct. It is well-established that neither "[t]he mere possession of monopoly power" nor "the concomitant charging of monopoly prices" is unlawful. *Verizon Comms. Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004). Rather, to state a claim for monopolization, Plaintiff must plead both (1) the possession of "monopoly power" *and* (2) the "willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident"—*i.e.*, exclusionary conduct. *Pac. Bell Tel. Co. v. Linkline Comms., Inc.*, 555 U.S. 438, 447-48 (2009). Plaintiff alleges no such conduct.

As noted, Plaintiff has alleged that the source of purported monopoly power over transportation of fireworks in inland China is the permitting decisions of the Chinese government—not any actionable exclusionary conduct by Firstrans. Plaintiff also alleges that another company, Sinotrans, tried to compete for a time, but withdrew from the inland shipping business "due to an inability to achieve a sufficient level of business to justify continuing operations." FAC ¶ 67; *see id.* ¶¶ 123-27. Sinotrans exited the market because its storage warehouse and river barge service were "losing money" and "incapable of becoming a viable business venture." FAC ¶ 127. Businesses sometimes fail because they lose money and cannot "justify continuing operations," as Plaintiff alleges here. Those are simply the ups and downs of business. Absent some exclusionary conduct not alleged here, they do not support a monopolization claim. *See, e.g.*, *Oahu Gas Serv. v. Pac. Res., Inc.*, 838 F.2d 360, 370 (9th Cir. 1988) ("The goal of the antitrust laws . . . is to safeguard general competitive conditions, rather than to protect

specific competitors."); *Omega Envtl., Inc. v. Gilbarco, Inc.*, 127 F.3d 1157, 1163 (9th Cir. 1997) ("[T]he antitrust laws were not designed to equip . . . competitor[s] with [defendant's] legitimate competitive advantage."); *Gen. Bus. Sys. v. N. Am. Philips Corp.*, 699 F.2d 965, 979 (9th Cir. 1983) ("[A] defendant, having succeeded in legitimately controlling the best, most efficient and cheapest source of supply . . . , does not have to share the fruits of its superior acumen and industry." (internal quotations and citation omitted)).  Plaintiff has no facts to connect Defendants to Sinotrans's inability to generate sufficient business, and the Court should decline any invitation to speculate that such facts might exist.  *See Somers v. Apple, Inc.*, 729 F.3d 953, 965 (9th Cir. 2013) (affirming dismissal of similarly threadbare monopolization claims because "[u]nder the plausibility standard, [plaintiff] must allege specific facts that raise an antitrust claim above the speculative level").

Third, even if Plaintiff did allege exclusionary conduct, monopolization of the "market for inland transportation services from Hunan and Jiangxi provinces to Shanghai" (FAC¶ 121) is well outside the reach of U.S. antitrust laws.  Specifically, the Foreign Trade Antitrust Improvement Act ("FTAIA") creates "'a general rule placing *all* (nonimport) activity involving foreign commerce outside the Sherman Act's reach.'" *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 985 (9th Cir. 2008) (quoting *F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 162 (2004) (hereinafter, "*Empagran I*")).  Plaintiff's monopolization claim focuses solely on the inland transportation of fireworks from Chinese factories to Shanghai, does not involve import commerce, and is thus barred by the FTAIA.

The discussion above highlights the sensibility of that limit as applied to this case.  The safety and permitting decisions of the Chinese government relating to the transport of fireworks in inland China are better left to those officials, and the courts of that country.  It is simply not subject matter for a United States District Court.

That some fireworks transported within inland China are ultimately bound for U.S. customers is not enough to make the delivery from Hunan and Jiangxi to Shanghai

"import commerce" under the FTAIA.  As the Ninth Circuit explained in *United States v. Hui Hsiung*, "import commerce" consists of "transactions that are directly between the U.S. plaintiff purchasers and the defendant."  778 F.3d 738, 755 (9th Cir. 2015) (citation omitted).  By contrast, here, Plaintiff does not allege that it purchases delivery services from inland China to Shanghai.  Instead, Plaintiff alleges that it places orders with "Chinese manufacturers" (FAC ¶ 3) and then receives bills of lading from the "forwarding agents," which are "engaged to handle the logistics" of shipping fireworks "[f]rom Shanghai . . . throughout the world."  FAC ¶ 16.  Nowhere does Plaintiff allege that it actually transacts for delivery "from Hunan and Jiangxi to Shanghai."  FAC ¶ 121.

The Sherman Act regulates foreign, non-import conduct only if it "*both* (1) sufficiently affects American commerce, *i.e.*, it has a 'direct, substantial, and reasonably foreseeable effect' on American domestic, import or (certain) export commerce, *and* (2) has an effect of a kind that antitrust law considers harmful, *i.e.*, the 'effect' must 'giv[e] rise to a [Sherman Act] claim.'"  *DRAM*, 546 F.3d at 985-86 (quoting *Empagran I*, 542 U.S. at 162).  Plaintiff's monopolization claim strictly concerns alleged monopolization of inland China transportation.  FAC ¶ 121.  Any alleged conduct relating to the permitting of warehouses in inland China or affecting Sinotrans's ability to earn a profit on its competing warehouse and barge business in inland China comes nowhere close to meeting this standard.

The Supreme Court has explained that "[p]rinciples of prescriptive comity" underlie this important limitation on the Sherman Act's application: "America's antitrust laws, when applied to foreign conduct, can interfere with a foreign nation's ability independently to regulate its own commercial affairs."  *Empagran I*, 542 U.S. at 165.  This Court should reject Plaintiff's invitation to second-guess the Chinese government's regulation of the warehousing and barge shipment of fireworks within inland China.

## C.  The Court Should Dismiss Plaintiff's Derivative State Law Claims

Absent any cognizable federal claims, Plaintiff's state law claims (Counts 3-8) should be dismissed for lack of jurisdiction pursuant to 28 U.S.C. § 1367(c)(3), which

codifies the Supreme Court's holding in *United Mine Workers of America v. Gibbs* that "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." 383 U.S. 715, 726 (1966). And even if jurisdiction were appropriate over Plaintiff's state law claims, the Amended Complaint fails to allege facts sufficient to meet the elements of any of them.

Plaintiff makes a cursory effort to invoke diversity jurisdiction, arguing that "the amount in controversy, in the aggregate, exceeds $250,000." FAC ¶ 63. But Plaintiff alleges no facts showing that any of its purported state law claims involves an amount in controversy sufficient to invoke diversity jurisdiction. For example, Plaintiff's breach of contract and negligence claims are not asserted on behalf of a purported class; instead, they involve just two containers of products, with purported injuries to Plaintiff that are well below the threshold for diversity jurisdiction. *See* FAC ¶¶ 80-81 (claiming injuries of approximately $7,000 relating to "Container 1"). And Plaintiff does not allege any facts supporting any amount in controversy for its remaining state law claims.

In any event, even if this Court finds that it has jurisdiction over Plaintiff's state law claims, they should be dismissed with prejudice for the following reasons.

### 1.    Plaintiff Fails to Allege Any Breach of Contract by Firstrans

Plaintiff alleges no facts to support a breach of contract claim against Firstrans. While it is not entirely clear from Plaintiff's skeletal pleading (FAC ¶¶ 128-131), Plaintiff's breach of contract claim appears to arise from its allegations regarding "Container 1" and "Container 2." *See* FAC ¶¶ 78-90. Plaintiff alleges that "another vendor"—not Firstrans—transported Container 1 from Shanghai to the United States, that its contents were mysteriously damaged, and that Plaintiff incurred costs and delays due to an inspection conducted on Plaintiff's shipment upon arrival in the United States by Customs and Border Protection ("CBP"). FAC ¶¶ 79-80. Regarding Container 2, Plaintiff alleges that it "entered into an agreement with a manufacturer in Hunan for the purchase of consumer fireworks," including a product known as "adult snaps," which Firstrans has allegedly declined to deliver. FAC ¶¶ 85-86.

California contract law[2] requires that Plaintiff plead and prove: "(1) the contract, (2) the [P]laintiff's performance of the contract or excuse for nonperformance, (3) the defendant's breach, and (4) the resulting damage to the [P]laintiff." *Richman v. Hartley*, 224 Cal. App. 4th 1182, 1186 (2014).  Here, Plaintiff has failed to allege at least two of these elements: (1) the existence of a contract between Plaintiff and Firstrans and (2) the breach of any such contract by Firstrans.  And because Plaintiff fails to allege a breach by Firstrans, Plaintiff therefore also fails to plead that any breach by Firstrans caused Plaintiff's harm.  *Troyk v. Farmers Group, Inc.*, 171 Cal. App. 4th 1305, 1352 (2009) ("Implicit in the element of damage is that the defendant's breach *caused* the plaintiff's damage.").

Plaintiff has identified no contract between itself and Firstrans.  Instead, it alleges that Container 1 was handled and damaged by "another vendor" and that it suffered delays due to an inspection conducted by CBP.  FAC ¶¶ 79-80.  And with respect to Container 2, Plaintiff alleges that it "entered into an agreement with a manufacturer in Hunan"—not Firstrans.  FAC ¶ 85.  It is unclear whether Plaintiff believes that the manufacturer breached its contract.  But that is of no moment here, because there are no allegations showing any contract between Plaintiff and Firstrans.  Plaintiff's bare-bones legal conclusions that "Defendants are in privity of contract with Plaintiff" (FAC ¶ 129) and that "Defendants have breached their agreed upon responsibilities and obligations causing Plaintiff to suffer damages" (FAC ¶ 130) will not suffice.  *See Iqbal*, 556 U.S. at 678.  Because Plaintiff has failed to plead the existence of a contract with any Defendant, it has not stated a claim for breach of contract.

### 2.    Plaintiff Fails to Allege Negligence by Firstrans

Plaintiff's negligence claim appears to arise out of the same "Container 1" and "Container 2" allegations, and it fails for similar reasons.  To establish negligence under

---

[2]  It is not clear under which state's law Plaintiff pleads breach of contract.  For purposes of this motion, Firstrans will address the elements for breach of contract under California law, which are comparable to those of other states.

California law, Plaintiff must allege plausible facts showing: "[(1)] a *legal duty* to use due care; [(2)] a *breach* of such legal duty; and [(3)] the breach as the *proximate or legal cause* of the resulting injury." *Ladd v. Cty. of San Mateo*, 12 Cal. 4th 913, 917 (1996). Plaintiff has failed to plead at least two of these elements: (1) breach of duty by Firstrans and (2) actual damages. There are no allegations that Firstrans breached any duty. Plaintiff alleges that Container 1—the only container purportedly damaged—was handled by "another vendor" and then inspected by CBP, not by Firstrans. FAC ¶¶ 9-80. And there are no facts suggesting that Firstrans breached any duty of care by allegedly declining to ship the "adult snaps" in Container 2. FAC ¶ 86.

Plaintiff's negligence claim is further barred by the economic loss doctrine, under which "damages representing the benefit of a contractual bargain" cannot support a claim for negligence. *Aas v. Superior Court*, 24 Cal. 4th 627, 640-41 (2000); *Seely v. White Motor Co.*, 63 Cal. 2d 9, 18 (1965); *see also Cty. of Santa Clara v. Atl. Richfield Co.*, 137 Cal. App. 4th 292, 318 (2006) ("One thing is clear: economic loss alone, without physical injury, does not amount to the type of damage that will cause a negligence . . . cause of action to accrue."). "Economic loss" comprises "damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits—without any claim of personal injury or damages to other property." *Sacramento Reg'l Transit Dist. v. Grumman Flxible*, 158 Cal. App. 3d 289, 295 (1984). Plaintiff's alleged injuries related to Container 1 and Container 2, including the "additional complications and additional fees," "significant delays and the imposition of additional expenses," "damages (to the cartons and their contents),"[3] and non-delivery of an "order" (FAC ¶¶ 79-81, 86), fall squarely within the definition of economic losses and thus are not recoverable in tort. *See S.F. Unified Sch. Dist. v. W.R. Grace & Co.*, 37 Cal. App. 4th 1318, 1327 (1995) ("Until physical injury occurs—until damage rises

---

[3] This allegation of "loss to the contract property itself" has been held to be non-recoverable in tort pursuant to the economic loss doctrine under California law. *Dept. of Water and Power of City of L.A. v. ABB Power T & D Co.*, 902 F. Supp. 1178, 1190 (C.D. Cal. 1995) (applying California law).

Gibson, Dunn &
Crutcher LLP

above the level of mere economic loss—a plaintiff cannot state a cause of action for . . . negligence.").

### 3.    The Court Should Dismiss Plaintiff's Claim for "Piercing the Corporate Veil"

"Piercing the corporate veil . . . is not an independent cause of action, but merely a method of imposing liability on an underlying cause of action." *Cambridge Elecs. Corp. v. MGA Elecs., Inc.*, 227 F.R.D. 313, 320 n.24 (C.D. Cal. 2004). Accordingly, this Court should dismiss Count 5 because it is not a cause of action at all. *Green Atlas Shipping S.A. v. United States*, 306 F. Supp. 2d 974, 977 (D. Or. 2003) ("I agree . . . that pierced corporate veil is not a separate cause of action and I will dismiss the [pierced corporate veil] claim . . . .") (cited approvingly by *Cambridge Electronics*, 227 F.R.D. at 320 n.24).

In any event, Plaintiff alleges no facts to warrant piercing the corporate veil. There "is a general presumption in favor of respecting the corporate entity. Disregarding the corporate entity is recognized as an extreme remedy, and courts will pierce the corporate veil only in exceptional circumstances." *Calvert v. Huckins*, 875 F. Supp. 674, 678 (E.D. Cal. 1995) (internal quotations omitted). Plaintiff thus has a "heavy burden to meet under both California and federal law" to prove a disregard of corporate separateness. *Maddock v. KB Homes, Inc.*, 631 F. Supp. 2d 1226, 1239 (C.D. Cal. 2007) (citation omitted). Plaintiff offers no facts to justify such an "extreme remedy." Instead, Plaintiff mechanically recites some factors that courts use to assess whether to pierce the corporate veil, and then merely asserts—"[u]pon information and belief"—that those factors exist. *See* FAC ¶¶ 138-151. Those "information and belief" conclusions are not only unsupported by any factual material, they are internally contradictory and nonsensical. For example, Plaintiff alleges that "Mr. Ding is the sole, shareholder and officer of Hua Yang" (*id.* ¶ 144) but also, in contradiction, that "Firstrans is the sole, shareholder and officer of Hua Yang" (*id.* ¶ 150); while alleging elsewhere that Hua Yang was merely the former name of Firstrans (*id.* ¶¶ 51-53), but that "Mr. Ding owns

two companies" (*id.* ¶ 22).  Such pleading does not even comply with Rules 8 and 11, much less satisfy *Twombly*'s pleading standard.

### 4.    The Court Should Dismiss Plaintiff's Claim for "Civil Conspiracy"

Like veil-piercing, civil conspiracy is also "not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Gaylor v. Morin*, No. EDCV 16-1224 JGB (KKx), 2018 WL 6133405, at *7 (C.D. Cal. Jan. 3, 2018) (citing *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510-11 (1994)).  To establish a civil conspiracy, Plaintiff thus must show an agreement among the alleged conspirators to commit a tortious act.  *Id.*  Further, "a civil conspiracy, however atrocious, does not give rise to a cause of action unless a civil wrong has been committed resulting in damage." *Id.* (internal quotations and citation omitted).  Here, Plaintiff's civil conspiracy fails as Plaintiff has not pled any agreement between Firstrans and anyone else to commit any tortious act.

To the extent Plaintiff suggests that the underlying wrong for its "civil conspiracy" claim is a purported violation of the Sherman Act, its claim is barred by *Copperweld Corp. v. Independence Tube Corp.*, which holds that the "conduct of a single firm" cannot support conspiracy charges under Section 1 of the Sherman Act.  467 U.S. 752, 767-78 (1984).  According to Plaintiff, Hua Yang was just the former name of Firstrans, and Mr. Ding is an executive, director, and shareholder of these companies. FAC ¶¶ 51, 54-59.  "Me, myself, and I" is not a conspiracy.  Plaintiff offers no allegations suggesting any conspiracy between two or more economic actors, thus foreclosing any antitrust conspiracy claim.  *Copperweld*, 467 U.S. at 767-78.

### 5.    Plaintiff Fails to Allege an Independent FDUPTA Claim

Florida's Deceptive Trade Practices Act ("FDUTPA") "can be violated in two ways: (1) a per se violation premised on the violation of another law proscribing unfair or deceptive practice and (2) adopting an unfair or deceptive practice." *Felice v. Invicta*

*Watch Co. of Am., Inc.*, No. 16-CV-62772-RLR, 2017 WL 3336715, at *2 (S.D. Fla. Aug. 4, 2017) (internal quotation marks and citation omitted).  Plaintiff apparently bases its FDUTPA claim on an alleged violation of the antitrust laws, because it offers no detail in support of its FDUTPA claim.  FAC ¶¶ 157-58.  Plaintiff's FDUPTA claim should thus be dismissed as it is purely derivative of its deficient antitrust claims.  *See JES Props., Inc. v. USA Equestrian, Inc.*, No. 802CV1585T24MAP, 2005 WL 1126665, at *19 (M.D. Fla. May 9, 2005) ("Plaintiffs' FDUTPA claim is based on the same allegations as their antitrust claims. . . .  Therefore, for the same reasons this Court has found no violation of the Federal antitrust laws, this Court finds that Plaintiffs have failed to establish the elements of a violation of [FDUTPA].").

To the extent Plaintiff claims that there was some other "deceptive and unfair" conduct that supports an FDUTPA claim, it is not alleged in the Amended Complaint. And Plaintiff's assertion that Firstrans's conduct is "deceptive and unfair" (FAC ¶ 158) is a threadbare, conclusory statement that fails to meet the *Iqbal* and *Twombly* requirements.  *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

### 6.    The Court Should Dismiss Plaintiff's Claim for "Unjust Enrichment"

"California does not recognize a stand-alone cause of action for unjust enrichment: 'unjust enrichment is not a cause of action, just a restitution claim.'" *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1031 (N.D. Cal. 2012) (dismissing unjust enrichment claim because it does not state an independent cause of action) (quoting *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1307 (2011)).  In any event, to recover unjust enrichment as a remedy for some other cause of action, "[P]laintiff must show that a benefit was conferred on [Firstrans] through mistake, fraud, coercion, or request."  *CRV Imperial-Worthington, LP v. Gemini Ins. Co.*, 770 F. Supp. 2d 1074, 1078 (S.D. Cal. 2010) (citing *Nibbi Bros., Inc. v. Home Fed. Sav. & Loan Ass'n*, 205 Cal. App. 3d 1415, 1422 (1988)).  Plaintiff has not pled any such wrongful or illegal conduct.  Accordingly, Plaintiff's "unjust enrichment" claim fails as a matter of law.

Gibson, Dunn &
Crutcher LLP

### D.     Plaintiff's Claims Against Mr. Ding and Hua Yang Are Nonsensical

The Court should reject Plaintiff's attempt to breathe life into its failed claims by naming Hua Yang Transportation Co. ("Hua Yang") and Mr. Ding Yang Zhong ("Mr. Ding") as defendants.  Neither of those other purported defendants has been served, so neither is before the Court on this motion.  Firstrans addresses the issue, however, because Plaintiff's effort to forestall dismissal by naming those two other purported defendants should be rejected.

Plaintiff alleges that Hua Yang is merely the former name of Firstrans.  FAC ¶ 51. To include Firstrans's former name as a separate defendant alongside Firstrans is absurd. And if Plaintiff cannot state a claim against Firstrans, it obviously cannot state a claim against Firstrans under its former name.

Similarly, Plaintiff asserts that Mr. Ding—a Chinese national who has not received service of process and does not appear to be subject to this Court's jurisdiction—is, "[u]pon information and belief," the sole shareholder and President of Firstrans.  FAC ¶¶ 55, 60.  That is wrong, but inconsequential because the Complaint contains no allegation of any individual conduct by Mr. Ding that would warrant naming him as an additional defendant.  Any claim against Mr. Ding is entirely derivative of the allegations against Firstrans, none of which state a claim upon which relief may be granted.  Accordingly, even if Plaintiff could serve Mr. Ding, show that he is subject to this Court's jurisdiction, and show (contrary to reality) that he is Firstrans's owner, there is no basis to avert dismissal because, as discussed previously, there is no "underlying cause of action" against Firstrans in the first instance.  *Cambridge Electronics*, 227 F.R.D. at 320 n.24.

### E.     Plaintiff's Claims Should Be Dismissed with Prejudice

"Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment."  *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (2008). Plaintiff has already been granted a chance to amend and has made it abundantly clear that no amendment can save its Complaint.  The Court has already held that the various

1 segments of Firstrans's shipping process do not constitute separate and distinct products
2 and services. MTD Order at 5. Yet, rather than allege new facts to support a tying claim,
3 Plaintiff repeats this already rejected argument.

4     Plaintiff has admitted that there is a "competitive market" for shippers in the
5 alleged tied product market. *E.g.*, Compl. ¶ 10. This fact forecloses Plaintiff's ability
6 to plead injury to competition. Plaintiff has tried quietly to back away from that
7 allegation by dropping it from the Amended Complaint, but Plaintiff cannot contradict
8 facts it has alleged. And indeed Plaintiff offers no facts showing any injury to
9 competition in the tied product market. Similarly, Plaintiff has alleged that Firstrans has
10 no involvement in the inland transportation leg, foreclosing Plaintiff's ability to plead
11 exclusionary conduct by Firstrans in this alleged market. Compl. ¶ 2. Plaintiff is stuck
12 with these allegations and cannot retract or contradict them by subsequently alleging
13 inconsistent facts. *Reddy*, 912 F.2d at 296-97; *Leadsinger, Inc. v. BMG Music Publ'g*,
14 512 F.3d 522, 532 (9th Cir. 2008) (affirming dismissal of an initial complaint that "could
15 not be saved by any amendment").

16     Finally, since Plaintiff's federal claims cannot be salvaged, there is no point in
17 granting Plaintiff leave to amend its ancillary state law claims or to assert derivative
18 claims against purported shareholders or former names of Firstrans.

### III. CONCLUSION

20     For the foregoing reasons, Firstrans respectfully requests that the Court dismiss
21 Plaintiff's First Amended Complaint with prejudice.

24 Dated: May 31, 2019                 GIBSON, DUNN & CRUTCHER LLP

26                    By:      */s/ Richard G. Parker*
27                            Richard G. Parker

28                   Attorney for Defendant Firstrans
                     International Co.